UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| FRANK WAGNER, | ) | Case No.: 1:11 CV 2173 |
| | ) | |
| Plaintiff | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF GARFIELD HEIGHTS, *et al.,* | ) | |
| | ) | |
| Defendants | ) | <u>ORDER</u> |

Currently pending before the court is Plaintiff Frank Wagner's ("Plaintiff") Motion for a Temporary Restraining Order. (ECF No. 2.) Plaintiff is seeking entry of a temporary restraining order, prohibiting Defendant City of Garfield Heights (the "City"), from enforcing against him and others, Section 1140.362 (the "Ordinance") of the City's codified ordinances and any other sign regulation seeking to limit, restrict, or prohibit the posting of political signs within the City that are larger than six square feet. Plaintiff contends that enforcement of the Ordinance infringes upon his and others' First Amendment rights. The court held a hearing on the record regarding the Motion for Temporary Restraining Order on Friday, October 21, 2011. Thereafter, Defendants filed their Opposition on October 24, 2011. For the reasons stated herein, Plaintiff's Motion for a Temporary Restraining Order is granted in part and denied in part.

## I. BACKGROUND

Plaintiff is a resident of the City. (Compl. ¶ 12, ECF No. 1.) Two political issues are currently being debated within the City: (1) the use of cameras to enforce traffic laws; and (2)

the imposition of a trash tax. (*Id*. at ¶ 20.) Councilwoman Tracy Mahoney ("Councilwoman Mahoney") has supported these measures. (*Id*. at ¶ 21.) She is currently seeking re-election to the City Council in this November's election. (*Id*. at ¶ 23.)

In September of this year, Plaintiff posted a sign in the yard of his residence, to demonstrate his opposition to Councilwoman Mahoney. (*Id*. at ¶ 22.) Plaintiff's sign measured four feet by four feet, and therefore was 16 square feet. (*Id*. at ¶ 29.) The sign stated the following: "You do the math: Traffic Camera's [sic] + Rubbish Trash = Mahoney Baloney." (*Id*. at ¶ 22.) Shortly thereafter, Plaintiff received a letter from Defendant William Wervey ("Wervey"), Building Commissioner for the City, dated September 19, 2011. (*Id*. at ¶ 26.) This letter informed Plaintiff that his sign violated the Ordinance regarding the maximum permissible size of political signs. (*Id*. at ¶ 28.) The Ordinance states that

> [p]olitical signs, may be placed in a window or on the lawn in any zoning district and shall not exceed six (6) square feet per sign, and shall not exceed four (4) feet in height. Such signs shall not be placed in the City's right-of-way, shall be maintained in good condition, and shall be removed after the political issue or campaign is completed or no longer contested.

Wervey instructed Plaintiff to remove the sign or to reduce the size of the sign in order to conform to the Ordinance. (Letter, ECF No. 1-3.) Wervey directed Plaintiff to correct his sign by September 23, 2011, and if he did not do so, the City would proceed with legal action in the Garfield Heights Municipal Court. (*Id*.) Section 1140.99 of the Codified Ordinances of the City states that each day a sign is in violation of the zoning regulations a separate violation occurs, and subjects the person violating the Odinance to a fine of up to $1,000 per day. Because of the potential court proceedings that could be brought against him, and the significant fines at issue, Plaintiff removed his sign. (Compl. ¶¶ 32, 33, ECF No. 1.)

Plaintiff filed the instant case on October 13, 2011. (ECF No. 1.) He also filed a Motion for a Temporary Restraining Order the same day. (ECF No. 2.) He asserts that the Ordinance, both facially and as applied to Plaintiff's political speech, restricts his and others' rights under the First and Fourteenth Amendments. He further asserts that the City's Sign Regulations are manifestly unconstitutional and "severely unduly burden the right and ability for individuals to engage in the marketplace of ideas through the exercise of one's free speech rights." (Mot. at 5, ECF No. 2.)

## II. FACIAL CHALLENGE

Plaintiff asserts a facial challenge to the Ordinance, as well as to any other ordinances restricting the size of political signs. However, Plaintiff does not make any arguments to demonstrate how the Ordinance(s) is overbroad or vague, but instead argues solely on his as-applied claim. Therefore, the court construes this Motion as seeking only a temporary restraining order for Plaintiff's claim that the Ordinance and any other City ordinances regulating the size of political signs are unconstitutional as applied to him.

## III. TEMPORARY RESTRAINING ORDER STANDARD

Federal Rule of Civil Procedure 65 governs the issuance of temporary restraining orders and preliminary injunctions. When ruling on a motion for a temporary restraining order or preliminary injunction, a district court must consider and balance four factors: (1) whether the movant has a strong or substantial likelihood of success on the merits; (2) whether the movant will suffer irreparable harm without the relief requested; (3) whether granting the relief requested will cause substantial harm to others; and (4) whether the public interest will be served by

granting the relief requested. *See Memphis Planned Parenthood, Inc. v. Sundquist*, 175 F.3d 456, 460 (6th Cir. 1999); *Schenck v. City of Hudson*, 114 F.3d 590, 593 (6th Cir. 1997).

## IV. ANALYSIS

### A. Likelihood of Success on the Merits

The court must first examine the strength of Plaintiff's likelihood of success on the merits. The Sixth Circuit has stated that "[w]hen a party seeks a preliminary injunction on the basis of the potential violation of the First Amendment, the likelihood of success on the merits often will be the determinative factor." *Detroit Free Press v. Ashcroft*, 303 F.3d 681, 710 (6th Cir. 2002) (internal citation and quotation omitted). Therefore, the court must find that Plaintiff has a high probability of proving the City's Ordinance is unconstitutional in order to determine if a temporary restraining order is warranted.

The Supreme Court has stated that signs are a protected form of expression and restrictions must meet the appropriate level of scrutiny in order to be constitutional. *City of Ladue v. Gilleo*, 512 U.S. 43 (1994). Thus, the court must first determine the appropriate level of scrutiny to apply to the City's Ordinance. *Id*. A state may impose general and non-discriminatory time, place, and manner restrictions on First Amendment activities. *Assoc. of Comty. Orgs. for Reform Now v. City of Dearborn*, 696 F.Supp. 268, 271 (E.D. Mich. 1988). A valid time, place, or manner restriction must meet intermediate scrutiny. Under this test, a restriction must meet the following requirements: "(1) it must be content-neutral; (2) it must be narrowly tailored to further substantial governmental interests; and (3) it must leave open ample alternative means for communicating the desired message." *Fehribach v. City of Troy*, 341 F.Supp.2d 727, 730 (E.D. Mich. 2004) (citing *Perry Education Assn. v. Perry Local Educators'*

*Assn.*, 460 U.S. 37, 44 (1983)). Content-neutral restrictions are "those that are justified without reference to the content of the regulated speech." *Fehribach*, 341 F.Supp.2d at 730. If the restriction is not content-neutral, and is content-based, it is subject to strict scrutiny. *Ohio Citizen Action v. City of Mentor-On-The-Lake*, 272 F. Supp.2d 671, 683 (N.D. Ohio 2003). Under this test, a restriction will survive if it is shown that the "regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." *Boos v. Barry*, 485 U.S. 312, 321 (1988). A restriction is content-based "when the content of the speech determines whether the ordinance applies." *Clear Channel Outdoor Inc. v. Town Bd. Of Windham*, 325 F. Supp.2d 297, 303 (N.D.N.Y. 2005) (citing *Forsyth Cnty. v. Nationalist Movement,* 505 U.S. 123, 134 (1992)). Typically, "when a statute or other government action is alleged to infringe on the exercise of First Amendment rights, the state or municipality bears the burden of demonstrating the constitutionality of the action." *Dearborn*, 696 F.Supp. at 272 (internal citations omitted).

### 1. Whether the Ordinance is Content-Neutral or Content-Based

Plaintiff contends that the Ordinance is content-based because it singles out only political signs for size limitations. However, a review of the Ordinance and the Residence District Signs Section demonstrates that political signs are not the only signs subject to limitations, but that many different types of signs are restricted in the same manner. As discussed above, the Ordinance states that political signs cannot exceed six square feet. Chapter 1140 regulates all signs within the City. Section 1140.361, titled "Residence District Signs," states:

> No signs shall be permitted in any residence district, except in U3 Districts and except the signs exempted from the permit requirements of this chapter by Section 1140.04, including for-sale signs, sold signs, open house, for-rent, and leasing signs, and signs of a religious, holiday, personal or political nature placed in a window or on a lawn subject to the following restrictions:

- 5 -

>  (Ord. 01-1998. Passed 1-12-98.)
>  A single for-sale, sold, for-rent, leasing, open house, religious, holiday or personal sign may be placed in a window or on the lawn of a residence district. Such sign shall not exceed six (6) square feet in area and four feet in height, and shall not be placed in the City's right-of-way or on the tree lawn. Such sign shall be maintained in good condition and must be removed within forty-eight (48) hours of a contract for sale, a lease agreement, the end of the holiday, or after otherwise fulfilling its purpose.

Thus, the City bans all signs in residence districts, but makes certain exceptions to this restriction. Section 1133.01 of the City's codified ordinances states that U3 Districts refer to apartment houses and office buildings, third floor living suites, and condominium properties. Section 1140.04 of the City's codified ordinances provides the following exemptions to the permit requirements:

> (a) Signs that are an integral part of the original construction of vending or similar machines, fuel pumps or similar devices;
>
> (b) Cornerstones, dedications and other similar building plaques or architectural elements incorporated into a building, in materials and colors compatible with the building design, displaying only the building's name, owner's name, architect's name, date(s) of construction, brief dedication or other historical information, and not exceeding eight (8) square feet in total area;
>
> (c) Signs which are attached to the inside of a window, do not exceed ten (10) square feet in sign face area, and do not cover more than twenty-five percent (25%) of the area of any single window pane;
>
> (d) Signs which are an integral part of the historic character of a structure that has been designated an official landmark or historic structure by any agency or body of the governments of the United States, State of Ohio, Cuyahoga County or City of Garfield Heights;
>
> (e) Hand-held signs not set on or affixed to the ground;
>
> (f) Temporary signs measuring less than twelve (12) square feet in sign face area, provided that such signs otherwise comply with all other requirements of Section 1140.37;
>
> (g) Monuments and markings within a cemetery;

>(h)   Any address numbers required by the Section 1345.01 of the Codified Ordinances, unless larger than six (6) inches in height.

None of these exceptions are based on the content of the sign, but are determined based on other attributes. A size limitation that applies to all signs in residential districts without reference to its content, cannot make such a restriction content-based.  Moreover, unlike ordinances in other cities that are organized by content, the City has organized its ordinance by the type of sign.  *See e.g., Advantage Media, L.L.C. v. City of Hopkins*, 379 F.Supp.2d 1030, 1039 (D. Minn. 2005) (ordinance had content-based subdivisions and definitions).  Therefore, the City's Ordinance is content-neutral and is subject to intermediate scrutiny.

### 2. Narrowly Tailored to Serve Substantial Government Interests

The second requirement that must be met in order for the Odinance to be valid is that it must be narrowly tailored to further substantial governmental interests.  The Supreme Court has stated that

> [w]hile signs are a form of expression protected by the Free Speech Clause, they pose distinctive problems that are subject to municipalities' police powers. Unlike oral speech, signs take up space and may obstruct views, distract motorists, displace alternative uses for land, and pose other problems that legitimately call for regulation. It is common ground that governments may regulate the physical characteristics of signs-just as they can, within reasonable bounds and absent censorial purpose, regulate audible expression in its capacity as noise.

*Ladue*, 512 U.S. at 48.  Section 1140.01 states the following as the purpose and intent of the sign regulations:

> (a)   To maintain high quality districts of all land uses, and attractive public and private facilities of all types, by permitting only signs appropriate to their environs;

> (b) To provide for reasonable and appropriate methods for identifying establishments in office, business and industrial districts by relating the size, type and design of signs to the size, type and design of the office, business and industrial establishments;
>
> (c) To eliminate any conflict between traffic control signs and other signs which would be hazardous to the safety of the motoring public or pedestrians;
>
> (d) To control the design and size of all signs so that their appearance will be aesthetically harmonious with an overall urban design for the area, in accordance with commonly accepted community planning and design practices, and the City's Master Plan.

While the City has advanced important government interests, which may even be classified as substantial, it fails to demonstrate that the Ordinance is narrowly tailored to achieve those interests. The Supreme Court has held that a restriction is narrowly tailored if it "promotes a substantial government interest that would be achieved less effectively absent the regulation." *Ward v. Rock Against Racism*, 491 U.S. 781, 782-83 (1989). The City argues that Plaintiff could easily still put up a sign conveying his message if he were to use multiple signs, rather than one that was sixteen square feet. (Opp. at 5-7, ECF No. 6.) The City maintains that Plaintiff could put three signs side by side that were six square feet each, or post numerous signs, since he has 181.575 square feet available to him in the aggregate to post signs based on the size of his property. (*Id*. at 6-7.) The City asserts that Plaintiff could display up to thirty signs on his property, as long as each individual sign is no larger than six square feet. (*Id*. at 7.)

However, the size limitations are not narrowly tailored to achieve the City's goals. Removing the size limitations on political signs would better enable the City to achieve its goals. The City's stated interests of maintenance of high districts, traffic control, and aesthetics are not furthered by allowing a person to have many different signs dotting a person's property, as opposed

to one large sign like Plaintiff's sign. Instead, those goals are likely diminished, if not completely defeated in some cases, by allowing residents to put up a multitude of signs rather than one or a few large signs.

Because the City has failed to demonstrate that the Ordinance is narrowly tailored to further substantial government interests, the restriction will likely be found to be unconstitutional. Since failure of any of the three requirements of a time, place, or manner restriction makes the restriction unconstitutional, the court finds that the restriction is likely to be an invalid time, place, or manner restriction, and need not address the third requirement. [1]

### B. Irreparable Harm

The court must next consider whether Plaintiff would suffer irreparable harm absent a temporary restraining order. The Supreme Court has held that "[t]he loss of First Amendment freedoms, even for minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). The Sixth Circuit has stated that "[e]ven minimal infringement upon First Amendment values constitutes irreparable injury sufficient to justify injunctive relief." *G & V Lounge Inc. v. Michigan Liquor Control Comm'n*, 23 F.3d 1071, 1078 (6th Cir. 1994). Because Plaintiff has demonstrated that the Ordinance is likely unconstitutional, he will suffer irreparable injury if the court does not grant his request for a temporary restraining order.

### C. Substantial Harm to Others

---

[1] The court notes that Defendants also argue in support of the Ordinance that it received three complaints regarding Plaintiff's sign, two of which came from Councilwoman Mahoney. (Mayor Vic Collova Aff. ¶¶ 21, 23.) However, Defendants do not point to any First Amendment jurisprudence that indicates that the response of the citizens or an officeholder is pertinent to the court's determination.

The court must next consider the probability that granting the temporary restraining order will cause substantial harm to others. It does not appear from the record that issuing the preliminary injunction would cause substantial harm to others. It appears unlikely given that residents already may post numerous signs on their property, and Plaintiff only seeks to place one larger sign. Furthermore, it is unlikely that allowing greater constitutionally protected political speech would harm anyone.

### D. Public Interest Served by an Injunction

The Sixth Circuit has stated that "it is always in the public interest to prevent the violation of a party's constitutional rights." *G & V Lounge, Inc.*, 56 F.3d at 1079. Further, "the public as a whole has a significant interest in ensuring equal protection of the laws and protection of First Amendment liberties." *Dayton Area Visually Impaired Persons, Inc. v. Fisher*, 70 F.3d 1474, 1490 (6th Cir. 1995). Thus, the public interest would be advanced by the issuance of a temporary restraining order enjoining enforcement of the size limitations in the Ordinance and § 1140.361,[2] and permitting Plaintiff to post his sign, totaling sixteen square feet.

### V. CONCLUSION

All four factors, including the most important factor, likelihood of success, favors Plaintiff. Therefore, the court will grant in part and deny in part Plaintiff's Motion for Temporary Restraining Order. (ECF No. 7.) Plaintiff's Motion is granted as to him, but denied as to others. Furthermore, since it appears that the City will not suffer any loss or damage by the issuance of the preliminary injunction, no bond or security is required of Plaintiff. Fed. R. Civ. P. 65(c).

---

[2] This section also regulates political signs, and therefore is also encompassed by Plaintiff's request for a temporary restraining order.

For the above-mentioned reasons, IT IS ORDERED that the City of Garfield Heights, its agents and employees, including Defendant Wervey, are enjoined from enforcing §§ 1140.362 and 1140.361 of the City's codified ordinances against Plaintiff, and must permit him to post his sign of sixteen square feet, until November 7, 2011, "unless before that time the court, for good cause, extends it for a like period or the [City] consents to a longer extension." Fed. R. Civ. P. 65(b)(2).

IT IS SO ORDERED.

/S/ SOLOMON OLIVER, JR.
UNITED STATES DISTRICT JUDGE

October 24, 2011